UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PHYLICIA WESTBROOK and ) <br> LARRY LAKES, surviving parents of ) <br> Landon Lakes, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA and ) <br> EMORY HEALTHCARE, INC., ) <br> ) <br> Defendants. ) | CIVIL ACTION <br> FILE NO. 1:18-cv-00727-TCB |

## AMENDED COMPLAINT FOR DAMAGES FOR MEDICAL MALPRACTICE AND FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT

Plaintiffs Phylicia Westbrook and Larry Lakes, as surviving parents of Landon Lakes, by and through their undersigned counsel, file this Amended Complaint for damages for medical malpractice and for damages under the Federal Tort Claims Act against the Defendants United States of America and Emory Healthcare, Inc., as follows:

### INTRODUCTION

1. This is an action against the Defendant United States of America under the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*) and 28 U.S.C. § 1346(b)(1), for negligence in connection with medical care provided to Plaintiff

Phylicia Westbrook and her baby, Landon Lakes, during the course of her pregnancy, by The Family Health Centers of Georgia, Inc. ("Family Health Centers of Georgia" or "FHCG") and Keila Arlaine Brown, M.D. ("Dr. Brown").

2. The claims herein are brought against Defendant United States of America pursuant to the Federal Tort Claims Act and 28 U.S.C. § 1346(b)(1) for money damages as compensation for the wrongful death of Plaintiffs' child, Landon Lakes, caused by Defendant United States of America's negligence on the part of Defendant's employees, Family Health Centers of Georgia and Dr. Brown.

3. Plaintiffs have fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act, as evidenced by the *Standard Form 95 attached hereto as Exhibit A*.

4. This suit has been timely filed, in that Plaintiffs served notice of this claim on the U.S. Department of Health and Human Services, and such notice was acknowledged as received on September 5, 2017, less than two years after the incident forming the basis of this suit. *Administrative Tort Claim Acknowledgment of Receipt Letter is attached hereto as Exhibit B*.

5. Plaintiffs timely filed their original Complaint in this matter pursuant to 28 U.S.C. § 2401(b) after receiving the Department of Health and Human Services "notice of final determination of this administrative tort claim" dated

January 25, 2018. *Administrative Tort Claim Denial Letter is attached hereto as Exhibit C.*

## PARTIES, JURISDICTION AND VENUE

6. Plaintiffs are, and at all times relevant to hereto were, residents of Fulton County, Georgia.

7. Plaintiffs Phylicia Westbrook and Larry Lakes are the surviving parents of Landon Lakes and bring this action individually in such capacity.

8. The Family Health Centers of Georgia, Inc. is a legal entity organized and existing under the laws of the State of Georgia with a principal office address at 868 York Ave SW, Atlanta, GA 30310.

9. Family Health Centers of Georgia was, at all times applicable to this Complaint, engaged in the business of owning, managing, and/or operating the medical practice known as The Family Health Centers at West End.

10. Family Health Centers of Georgia is a federally qualified Community Health Center (CHC).

11. Pursuant to the Federally Supported Health Centers Assistance Acts (FSHCAA) of 1992, (Pul. L. 102-501) and 1995 (Pub. L. 104-73), as a Community Health Center, Family Health Centers of Georgia is deemed a Federal employee of

the Public Health Service and is a covered entity under the FTCA. 42 U.S.C. § 233 (a) – (l).

12.     At all times relevant hereto, Keila Arlaine Brown, M.D. was an employee of Family Health Centers of Georgia, providing medical care services in the performance of and within the scope of her employment, to a health center patient, and is therefore, pursuant to the FSHCAA, also deemed an employee of the Public Health Service and is covered under the FTCA.

13.     Pursuant to 28 USC § 1346(b)(1), the Federally Supported Health Centers Assistance Acts and the FTCA, jurisdiction is proper in this Court.

14.     Venue is proper under 28 USC § 1402(b) and 28 USC 1391(b) and 1391(c), in that all, or a substantial part, of the acts and omissions forming the basis of these claims occurred in the Northern District of Georgia and Defendant does business in this judicial district.

15.     Emory Healthcare, Inc. ("Emory Healthcare") is a corporation organized and existing under the laws of the State of Georgia, and was, at all times applicable to this Complaint, engaged in the business of operating the hospital facility known as Emory University Hospital-Midtown.  Service may be made on said Defendant by serving its registered agent: Amy Adelman, Emory University, 201 Dowman Drive, 312 Administrative Building, Atlanta, GA, 30322, or by

4

serving its counsel, David Ladner, Esq., Bendin, Sumrall & Ladner, LLC, 1360 Peachtree Street NE, Suite 800, Atlanta, GA 30309, who is authorized to accept service and waive process in the matter.

16. At all times material hereto, Defendant Emory Healthcare, Inc. operated the hospital known as Emory University Hospital-Midtown through its nurses, agents, servants, workers, employees, and/or principals, actual, apparent and/or ostensible, all of whom were acting within the course and scope of their employment and under the direct and exclusive control of this Defendant.

17. Defendant Emory Healthcare, Inc. is vicariously liable for the acts of its employees and agents.

18. Plaintiffs' claims in this matter against Defendant Emory Healthcare, Inc. are so related to their claims against Defendant United States of America under the Federal Tort Claims Act that they form part of the same case or controversy, and supplemental jurisdiction over is Defendant Emory Healthcare, Inc. is therefore proper. 28 U.S.C.A. § 1367(a).

19. Based on the foregoing, jurisdiction and venue are proper in this Court.

20. Plaintiffs state their intention to bring each and every claim permissible, proper and authorized under Georgia law and seek all damages,

economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, and general damages permissible under Georgia law.

## FACTUAL BACKGROUND

21. On March 10, 2016, Phylicia Westbrook was seen at Family Health Centers of Georgia where she had positive pregnancy test.

22. On April 7, 2016, Phylicia Westbrook was seen at FHCG by Yolanda Huyghue, PA-C to begin prenatal care.

23. On May 5, 2016, Phylicia Westbrook was seen at FHCG by Dr. Brown for a prenatal visit. The note from that visits indicates that a referral was made to OB/neonatal due to Ms. Westbrook's history of preterm labor and delivery and her history of gestational diabetes.

24. On May 12, 2016, Ms. Westbrook had an obstetrical (OB) ultrasound at Atlanta Perinatal Associates, which included the following notes, impressions and findings –

> Impressions:   Two prior classical Cesarean Sections ("C-Section" or "C/S")
>
> History of gestational diabetes

OB history significant for secondary classical c-section, complicated by gestational diabetes, 9 lbs. 5 oz.

Previous Surgical History:   Classical C/S times two

6

25. On June 30, 2016, Phylicia Westbrook was seen at FHCG by Dr. Brown for a prenatal visit. The note from that visit indicates a normal pregnancy in its third trimester.

26. On July 12, 2016, Phylicia Westbrook was seen at FHCG by Natasha Houston, PA for a prenatal visit. On this visit she was diagnosed with hyperglycemia.

27. On September 1, 2016, Phylicia Westbrook was seen at Atlanta Perinatal Associates by Dr. Wilbert Fortson where she had an OB ultrasound. Her baby's fetal weight was noted to be 5 lb, 3 oz (77th percentile); his abdominal circumference was at the 92nd percentile (up from 55th percentile a month previously).

28. On September 9, 2016, Phylicia Westbrook was seen at FHCG by Dr. Brown for a prenatal visit. The note from this visit indicates that a repeat C-Section and tubal ligation was scheduled for October 18, 2016 at 10:30 a.m. Her blood sugar on this visit was 190.

29. On September 15, 2016, Phylicia Westbrook was seen at FHCG by Yolanda Huyghue, PA-C for a prenatal visit. The note from this visit indicated that she was being seen for supervision of normal "first pregnancy" in third trimester. However, this was not Ms. Westbrooks' first pregnancy.

30. On September 29, 2016, Phylicia Westbrook was seen at FHCG by Dr. Brown for a prenatal visit. Also on this date, she had an obstetrical (OB) ultrasound at Atlanta Perinatal Associates, which included the following notes, impressions and findings --

>Gestational Age:  38w2d by AUA (average ultrasound age) and 36w6d by 1st ultrasound
>
>EFW (Estimated Fetal Weight):  8 lb 1 oz (95%)
>
>Biophysical Profile Score:  8/10
>
>Tech Comments:  Fetal biometry reflects accelerated growth, with both the abdominal circumference and estimated fetal weight exceeding the 95th percentile for gestational age.  Findings are consistent with large for gestational age.
>
>Abdominal Circumference:    100% percentile
>
>Discussed with the patient regarding the EFW of the 95 percentile.
>
>The patient reports that she is scheduled for a repeat cesarean delivery and not a vaginal delivery.

31. On October 6, 2016, Phylicia Westbrook slipped and fell while getting out of her car.  She fell on her knees but her abdomen hit the car parked next to her.  Ms. Westbrook was seen later that day at FHCG by Dr. Brown.  Tests on her urine showed a glucose level of 1000 with 3+ ketones.  Her blood glucose was 301.

A diagnosis of gestational diabetes was made, as well as a note regarding possible early delivery.

32. On October 6, 2016, Phylicia Westbrook presented to Emory University Hospital Midtown for an OB ultrasound and biophysical profile, the notes from which included the following impressions and findings --

> Gestational Age: 37w6d
>
> Biophysical Profile Score: 8/8
>
> Patient admits to tripping and falling prior to today's visit. Patient stated she fell on her knees and hit her abdomen on the car.

33. Following the OB ultrasound and biophysical profile at Emory University Hospital Midtown on October 6, 2016, Ms. Westbrook was discharged home.

34. On the evening of October 10, 2016, Phylicia Westbrook presented to Emory University Hospital Midtown complaining that she was urinating a lot and could not drink enough. She reported that she had been diagnosed with gestational diabetes in a previous pregnancy and that she had taken her own blood sugar measurement at home prior to coming to the hospital and that it was 429.

35. The fetal heart rate tracing on this October 10, 2016, presentation showed a baseline heart rate of about 160 and moderate variability.

9

36. Ms. Westbrook was given an IV fluid bolus. A repeat blood glucose level was 234. Ms. Westbrook was discharged home at around 2:00 a.m. on the morning of October 11, 2016, with instructions to keep her doctor's appointment for October 14, 2016.

37. Just past midnight on October 12, 2016, Phylicia Westbrook returned to Emory University Hospital Midtown. Her gestational age was 38 weeks and five days at the time.

38. Ms. Westbrook was placed on a fetal heart rate monitor and blood work was ordered and drawn.

39. Fetal heart rate monitoring was started at about 12:56 a.m. on the morning of October 12, 2016, and continued to until at or around 7:30 a.m. that morning. The fetal heart rate tracing is not reliable from at least 7:30 a.m. forward and fetal heart rate monitoring stopped completely at 7:39 a.m.

40. Initially, the fetal heart rate tracing was a Category II tracing, but subsequently can more properly be classified as a Category III tracing.

41. Ms. Westbrook was officially admitted to the hospital at 4:31 a.m. Her admitting and attending physician was Dr. Keila Brown. The Discharge Summary states that Ms. Westbrook was admitted due to elevated blood sugar for delivery and that she had a history of two previous C-Sections.

42. At 7:45 a.m., Ms. Westbrook was taken to the OR for a C-Section.

43. The medical records indicate that "[w]hile in OR just prior to receiving regional anesthesia, emergency section was called on separate patient; anesthesia proceeded to attend that delivery; returned and placed regional anesthesia fetal heart tones were not detected; stat c-section done." There was no fetal heart rate monitoring during this time.

44. Surgery was started at 8:38 a.m.

45. Baby boy Landon Lakes was delivered at 8:40 a.m. At delivery he was purple and limp, with no respiratory effort. The Apgar scores were zero at one, five, ten, fifteen and twenty minutes.

46. Resuscitation efforts were continued for approximately 50 minutes, at which time the he was pronounced dead.

47. Landon Lakes weighed eleven pounds nine ounces at delivery.

48. An autopsy was performed on Landon Lakes. The Autopsy Pathology Report Final Anatomical Diagnosis included --

> Stillborn male infant delivered at 38.2 weeks gestation to mother with gestational diabetes.
>
> Macrosomia:  5215 G    (11.5 lbs.)

49. Additional autopsy results included findings of a macrosomic infant with cardiomegaly, hepatomegaly, adrenomegaly and an enlarged thymic gland

11

likely due to gestational diabetes; increased intraalveolar squames consistent with non-specific fetal stress.

## **NEGLIGENCE**

50. Dr. Keila Brown deviated from the standard of care and skill exercised by physicians generally under similar conditions and like surrounding circumstances in 2016.

51. Dr. Brown deviated from the standard of care by failing to schedule for delivery and deliver Landon Lakes prior to Phylicia Westbrook's October 12, 2016, presentation to Emory University Hospital Midtown, given Ms. Westbrooks' history of two prior classical Cesarean Sections.

52. Dr. Brown also deviated from the standard of care by failing to deliver Landon Lakes earlier during Phylicia Westbrook's October 12, 2016, presentation to Emory University Hospital Midtown, given her prior clinical history and her presentation and clinical course during that admission.

53. Dr. Brown also deviated from the standard of care by failing to make note of or act upon the fact that there was no fetal heart rate monitoring on Ms. Westbrook during approximately the last hour prior to the time of her stillborn delivery of Landon Lakes.

54. The aforesaid deviations from the standard of care by Dr. Brown proximately caused or contributed to the fetal demise of Landon Lakes.

55. One or more of the Defendant Emory Healthcare's nurses caring for Phylicia Westbrook on her October 12, 2016, presentation and admission to Emory University Hospital-Midtown in the hours prior to her C-Section, including at least Lee S. Reid, R.N., deviated from the standard of care and skill exercised by nurses generally under similar conditions and like surrounding circumstances in 2016.

56. One or more Emory Healthcare nurses deviated from the standard of care by failing to make note of or act upon the FHR tracing on Ms. Westbrook during her October 12, 2016 presentation and admission, including at least bringing the circumstances and findings to the attention of Dr. Brown or another physician.

57. One or more Emory Healthcare nurses deviated from the standard of care by failing to make note of or act upon the fact that there was no FHR monitoring on Ms. Westbrook during approximately the last hour prior to the time of her stillborn delivery of Baby Boy Landon Lakes, including at least bringing the circumstances and findings to the attention of Dr. Brown or another physician.

58. The aforesaid deviations from the standard of care by Emory Healthcare's nurses proximately caused or contributed to the fetal demise of Landon Lakes.

59. *Exhibit D* attached hereto, the Affidavit of Arthur Richard Boerner, M.D., sets forth at least one act of negligence on the part of Dr. Keila Brown and the Emory Healthcare nurses.

## **WRONGFUL DEATH**

60. As a direct and proximate result of the acts and omissions of Defendants' employees or agents as set forth herein, conducted within the course and scope of their respective employments, Landon Lakes suffered fetal demise and was stillborn on October 12, 2016.

61. Landon Lakes is survived by his parents, Phylicia Westbrook and Larry Lakes.

62. As the surviving parents of Landon Lakes, Plaintiffs Phylicia Westbrook and Larry Lakes are entitled to bring this suit against Defendant for the wrongful death of their son, and hereby do so in their individual capacity. See O.C.G.A. § 51-4-2(a).

63. Plaintiffs are entitled to recover damages from the Defendants equal to the full value of the life of Landon Lakes, without deduction for any necessary or personal expenses had he lived. See O.C.G.A. §§ 51-4-1(1), 51-4-2(a).

64. Plaintiffs are therefore entitled to recover damages from Defendants as set out below.

WHEREFORE, Plaintiffs pray as follows:

(a) That summons be issued and that Defendants be served with process and be required to answer according to law;

(b) That Plaintiffs have and recover judgment against Defendants for the full value of the life of Landon Lakes; and

(c) That Plaintiffs be awarded such other relief as this Court deems just and proper.

Respectfully submitted this 2nd day of May, 2018.

> */s/ Daniel M. Epstein*
> JAMES (JAY) SADD, ESQUIRE
> Georgia Bar No.: 622010
> DANIEL M. EPSTEIN, ESQUIRE
> Georgia Bar No.: 249529
> Attorneys for Plaintiffs

**SLAPPEY & SADD, LLC**
352 Sandy Springs Circle
Atlanta, Georgia 30328
Tel: (404) 255-6677
Fax: (404) 255-7340
jay@lawyersatlanta.com
dan@lawyersatlanta.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Amended Complaint for Damages for Medical Malpractice and for Damages Under the Federal Tort Claims Act** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record for Defendant United States of America.  I further certify that the foregoing will be personally served on Defendant Emory Healthcare, Inc. and was prepared in Times New Roman 14pt font and otherwise complies with Local Rule 5.1.

Respectfully submitted May 2, 2018.

>  */s/ Daniel M. Epstein*
>  Daniel M. Epstein, Esq.
>  Georgia Bar No. 249529
>  SLAPPEY & SADD, LLC
>  352 Sandy Springs Circle
>  Atlanta, Georgia 30328
>  (404) 255-6677 (Office)
>  (404) 255-7340 (Facsimile)
>  dan@lawyersatlanta.com
>  Attorney for Plaintiffs